UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GABRIELA ALEJANDRA
LOZANO SOUSA,

      Petitioner,

v.                               Case No.: 3:25-cv-1617-JEP-PDB

FIELD OFFICE DIRECT.
GARRETT RIPA, PAMELA
BONDI, SECRETARY KRISTI
NOEM and SHERIFF SCOTTY
RHODEN,

      Respondents.

_____/

## **ORDER**

Through counsel, Petitioner Gabriela Alejandra Lozano Sousa, a detainee of the United States Immigration and Customs Enforcement ("**ICE**"), filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, seeking, among other relief, release from custody or a bond hearing in accordance with 8 U.S.C. § 1226(a). (Doc. 1). Respondents filed an Amended Response, arguing that 8 U.S.C. §§ 1252(b)(9) and (g) bar review of Petitioner's claims and that Petitioner's detention is lawful under 8 U.S.C. § 1225(b)(2). (Doc. 16). Petitioner filed an Amended Reply (Doc. 21) and a Notice of Supplemental Authority (Doc. 22).

**I.**

Petitioner Gabriela Alejandra Lozano Sousa is a Venezuelan citizen. (Doc. 1, ¶ 27; *see also* Doc. 16-2 at 1). She entered the United States in April 2023 pursuant to a pre-authorized grant of a two-year parole. (Doc. 1, ¶ 86; *see also* Doc. 1-2 at 1). Petitioner has resided in the United States, and on April 17, 2025, she married her now-husband, who is a United States citizen. (Doc. 1, ¶ 88). Two days later, Petitioner's parole expired. (Doc. 1-2 at 1).

On or around October 18, Petitioner and her husband were arrested at their residence in Broward County, Florida, for a domestic dispute, but no charges were filed. (Doc. 1, ¶ 90; Doc. 16 at 2). However, the Department of Homeland Security ("**DHS**") determined that Petitioner did not lawfully adjust her status after her parole expired, and it transferred her to the custody of ICE pending removal proceedings. (Doc. 1, ¶ 91; Doc. 16-2 at 1–4). On November 4, Petitioner's husband filed a Petition for Alien Relative (Form I-130) to adjust Petitioner's legal status. (Doc. 1-3 at 1). On November 17, Petitioner was issued a Notice to Appear, charging her with being "an immigrant not in possession of [valid documents]," (Doc. 1-5 at 1–4), and on November 30, she was transferred to the Baker County Detention Center in Macclenny, Florida, where she remains detained pending removal proceedings, (Doc. 1, ¶¶ 4, 92).

As a result, Petitioner brings the instant petition asserting claims for violation of the Immigration and Nationality Act ("**INA**") (Count I), violation

of the Due Process Clause of the Fifth Amendment to the United States Constitution (Count II), judicial estoppel (Count III), violations of the Tenth Amendment to the United States Constitution (Counts IV and V), violation of the Administrative Procedure Act ("**APA**") (Count VI), and declaratory relief under the APA (Count VII). (*Id.* ¶¶ 107–58). Petitioner has exhausted her administrative remedies. (*See* Doc. 21-5 at 1–4).

## II.

Beginning with the threshold jurisdictional question, 28 U.S.C. § 2241 extends the writ of habeas corpus to those who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Respondents assert that 8 U.S.C. §§ 1252(b)(9) and (g) bar this Court from reviewing Petitioner's claims. They ask this Court to suspend Local Rule 3.01(h)—prohibiting incorporation by reference of any other motion, legal memorandum, or brief—and review their arguments set forth in a prior case before this Court, *Diaz Lopez v. Dir. of Enf't & Removal Operations*, --- F. Supp. 3d ----, No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938 (M.D. Fla. Jan. 26, 2026). (Doc. 16 at 8 n.6). This Court rejected these jurisdictional arguments in *Diaz Lopez* and, for the reasons stated there, it does so here as well. *See* 2026 WL 261938, at *5–6.

Turning to the merits, Petitioner asks this Court to hold that she is an alien subject to 8 U.S.C. § 1226(a), which may afford an opportunity for a bond

-3-

hearing, rather than 8 U.S.C. § 1225(b)(2), which provides for mandatory detention. "'Under the INA, detention and removal procedures depend on the type of' alien involved." *Id.* at *1 (quoting *Chen v. Almodovar*, No. 25 CIV. 9670 (JPC), 2026 WL 100761, at *1 (S.D.N.Y. Jan. 14, 2026)). This Court detailed the various classifications of aliens under the INA's statutory scheme in *Diaz Lopez*, but it will provide a brief overview of the provisions relevant to this petition.

Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Thereunder, aliens may receive bond hearings, and their detention is discretionary. *See id.* ("[P]ending [a removal] decision, the Attorney General (1) may continue to detain the arrested alien; and (2) may release the alien on (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole."). However, an alien who is otherwise within the scope of 1226(a) but "is inadmissible" or "is deportable" due to the commission of certain enumerated crimes is not subject to discretionary detention under section 1226(a). *Id.* § 1226(c). Rather, "[t]he Attorney General shall take into custody" such aliens. *Id.*[1]

---

[1] The Laken Riley Act, enacted in 2025, "added another 'enumerated reason for mandatory detention' to section 1226(c)." *Diaz Lopez*, 2026 WL 261938, at *3 (quoting

-4-

Section 1225 devises a different framework. Thereunder, immigration officers must inspect "[a]ll aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States." 8 U.S.C. § 1225(a)(3). The INA defines "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). And in a subsection entitled "Aliens treated as applicants for admission," section 1225 provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." *Id.* § 1225(a)(1).

"[S]ection 1225 goes on to 'divide[ ] applicants for admission into three categories, with differing detention and removal consequences attaching to each.'" *Diaz Lopez*, 2026 WL 261938, at *2 (quoting *Chen*, 2026 WL 100761, at *2). But relevant to this petition, section 1225(b)(2)(A) requires detention (without bond) of "an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted[.]" 8 U.S.C. § 1225(b)(2)(A).[2] These

---

*Chen*, 2026 WL 100761, at *4).

[2] "Crewmen, stowaways, and aliens falling within section 1225(b)(1) are expressly excluded from [section 1225(b)(2)(A)]." *Diaz Lopez*, 2026 WL 261938, at *3 (citing 8 U.S.C. § 1225(b)(2)(B)).

applicants for admission are entitled to full removal proceedings but are nonetheless subject to mandatory detention. *See id.*; *Diaz Lopez*, 2026 WL 261938, at \*3.

Indeed, all three categories of applicants for admission identified in section 1225(b), which this Court outlined in *Diaz Lopez*, are subject to mandatory detention and are not entitled to bond hearings. 2026 WL 261938, at \*3; *see also Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

There is a single exception to section 1225(b) mandatory detention: "[T]he INA authorizes the [DHS] Secretary to grant a discretionary and temporary 'parole into the United States' to any 'alien applying for admission to the United States' on 'a case-by-case basis for urgent humanitarian reasons or significant public benefit.'" *Diaz Lopez*, 2026 WL 261938, at \*3 (quoting 8 U.S.C. § 1182(d)(5)(A)). However, the parole "shall not be regarded as an admission of the alien," and it must end "when the purposes of such parole . . . have been served." 8 U.S.C. § 1182(d)(5)(A). At that point, the alien "shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* "Critically, '[t]hat express exception to detention' by temporary parole 'implies that there are no *other* circumstances under which aliens detained under

-6-

§ 1225(b) may be released.'" *Diaz Lopez*, 2026 WL 261938, at \*3 (quoting *Jennings*, 583 U.S. at 300).

With this framework in mind, this Court turns to the merits of the instant petition.

### III.

Petitioner falls within the category of applicants for admission outlined in section 1225(b)(2)(A). As she alleges, despite her parole, she is an "applicant for admission" because she is "present in the United States" but "ha[s] not been admitted." (Doc. 1, ¶ 112 (quoting 8 U.S.C. § 1225(a)(1)). This fact alone defeats Petitioner's attempt to classify herself as a section 1226(a) detainee because section 1225(b) governs applicants for admission and provides for mandatory detention without possibility of bond.[3]

---

[3] Focusing on its "alien seeking admission" language, Petitioner argues that section 1225(b)(2)(A) applies to only a subset of applicants for admission, and that she falls outside that subset. (*See* Doc. 1, ¶¶ 40–59; Doc. 21 at 7–9; Doc. 22 at 1–2). This Court has kept apprised of emerging federal court rulings on this issue, but in the absence of a ruling from the Supreme Court or the Eleventh Circuit, and for the reasons set forth in *Diaz Lopez*, 2026 WL 261938, at \*7–12, this Court rejects Petitioner's interpretation of the INA. Moreover, while numerous district courts have addressed the statutory interpretation question that Petitioner presents, only two courts of appeals—the Fifth and Eighth Circuits—have squarely done so. And in their opinions, those courts of appeals gave the same answer that this Court did in *Diaz Lopez. See Avila v. Bondi*, --- F.4th ----, No. 25-3248, 2026 WL 819258, at \*1–6 (8th Cir. Mar. 25, 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498–508 (5th Cir. 2026); *but see Castanon-Nava v. DHS*, 161 F.4th 1048, 1062 (7th Cir. 2025) (preliminarily determining the Government was not likely to prevail on its argument).

Nonetheless, Petitioner has filed a notice of supplemental authority directing the undersigned's attention to *Guaiquire v. Quinones*, No. 6:26-cv-169-RBD-RMN, 2026 WL 279369 (M.D. Fla. Feb. 3, 2026), and asking the undersigned to "follow[ ] the principle of *stare decisis* and grant[ ] the same" relief here. (Doc. 22 at 2). It should go without saying

Petitioner argues that this case is distinct because her initial entrance into the United States was lawful. (*See* Doc. 21 at 1–2). But as Petitioner concedes, a grant of parole does not admit an applicant for admission. (*See* Doc.

_____

that each district judge is an independent judicial officer, and one district judge is not bound to the views of his colleagues. *See Fishman & Tobin, Inc. v. Tropical Shipping & Constr. Co.*, 240 F.3d 956, 965 (11th Cir. 2001) ("While the decisions of their fellow judges are persuasive, they are not binding authority. As a result, the district court cannot be said to be bound by a decision of one of its brother or sister judges." (citation omitted)). Indeed, that much is quite evident from even the most cursory review of the supplemental authority itself. In any event, upon thorough review of Petitioner's supplemental authority, the undersigned deems far more persuasive the Fifth and Eighth Circuits' dispassionate, carefully reasoned, and thorough analyses, which the courts judiciously confined to the statutory text, structure, and context, without discussion of extraneous considerations. *See generally Avila v. Bondi*, 2026 WL 819258, at \*1–6; *Buenrostro-Mendez*, 166 F.4th at 498–508.

Finally, this Court notes that when it issued *Diaz Lopez*, it declined to address the "major questions doctrine." While Petitioner does not advance a major-questions argument, this Court is aware that yesterday the Eleventh Circuit heard argument in two appeals posing the same statutory issue that *Diaz Lopez* addressed (and that Petitioner raises here). The argument entailed discussion of the major questions doctrine. *See* Oral Argument, *Alvarez v. Warden, Fed. Detention Ctr. Mia.*, No. 25-14065 (consolidated with *Perez v. Assistant Field Officer Dir.*, No. 25-14075) (11th Cir. Mar. 26, 2026) https://www.ca11.uscourts.gov/sites/default/files/oral_argument_recordings/25-14065_03262026.mp3 (at 0:28:32–0:36:00, 0:39:00–0:39:35, and 1:00:17–1:02:53).

For whatever it's worth, this Court now takes this opportunity to briefly explain why it considers the major questions doctrine inapplicable to Petitioner's statutory-interpretation issue. In short, the doctrine applies to novel and expansive powers exercised under purported delegations of discretionary authority, not longstanding duties carried out under statutory commands. *See, e.g.*, *Biden v. Nebraska*, 600 U.S. 477, 494, 496–506 (2023); *West Virginia v. EPA*, 597 U.S. 697, 722–735 (2022); *Nat'l Fed'n of Ind. Bus. v. OSHA*, 595 U.S. 109, 117–20 (2022) (per curiam); *Ala. Ass'n of Realtors v. Dep't of Health & Human Servs.*, 594 U.S. 758, 764 (2021) (per curiam); *see also Learning Resources v. Trump*, 146 S. Ct. 628, 639 (2026) (three-Justice plurality). Here, the Government is performing a longstanding statutory duty—mandatory detention of certain aliens pending removal proceedings—and the question is simply which aliens that duty concerns. Absent further guidance from higher courts, this Court is hesitant to expand the major questions doctrine beyond its current contours and, therefore, declines to apply it here. *See, e.g.*, *West Virginia*, 597 U.S. at 721, 723 (cabining the doctrine to "extraordinary cases").

1, ¶ 112). Rather, section 1182(d) expressly provides that "such parole of such alien shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). And "when the purposes of such parole . . . have been served," section 1182 mandates that the paroled alien be "dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*

Consequently, after Petitioner's parole expired on April 19, 2025, she returned to her status as an applicant for admission. On November 17, 2025, DHS issued her a notice to appear, which charged her with being "an arriving alien" who is "not a citizen or national of the United States" and "ha[s] not adjusted to a Lawful Permanent Resident." (Doc. 1-5 at 1). The notice indicates that an examining immigration officer determined her clear lack of entitlement to admission, as required by section 1225(b)(2)(A), and Petitioner does not appear to dispute this in her filings. (*See id.*). Thus, Petitioner is subject to mandatory detention and full removal proceedings under section 1225(b)(2)(A), without possibility of bond.[4]

As a final argument regarding her classification under the INA, Petitioner points to DHS' Record of Deportable/Inadmissible Alien, Form I-213.

---

[4] Section 1225(2)(C) provides that, where an inadmissible applicant for admission "is arriving on land . . . from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a" section 1229a full removal proceeding, rather than detain her. But because Venezuela is not contiguous to the United States, the Attorney General does not have this option here, and the default mandatory-detention provision of section 1225(b)(2)(A) applies instead.

(*See* Doc. 16-2 at 1–4). She argues that because the bottom of the first page states, "Warrant of Arrest," ICE detained her under section 1226 and must continue to detain her under that statute. (Doc. 21 at 7); *see also* 8 U.S.C. § 1226(a) ("*On a warrant* issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." (emphasis added)). Even crediting Petitioner's reading of the Form I-213,[5] it has no bearing on the dispositive question in this case. That DHS may have obtained an unnecessary warrant does not alter her classification as an applicant for admission and her corresponding placement in section 1225(b)(2)(A) detention. *See, e.g.*, *Costa v. Noem*, No. 3:25-cv-1384-JEP, 2026 WL 456771, at *2 (M.D. Fla. Feb. 18, 2026) (explaining that although petitioner was not detained after his prior encounter with U.S. Border Patrol, "his status is no different than the petitioner's in *Diaz Lopez* for purposes of considering whether § 1225(b)(2)(A) or § 1226(a) applies to his detention").

It necessarily follows that Petitioner cannot succeed in her claim (in Count II) that her detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution. "'Detention during removal proceedings is a constitutionally permissible part of' the deportation process."

---

[5] In full, the Form I-213 states, "Disposition: Warrant of Arrest/Notice to Appear." (Doc. 16-2 at 1).

*Diaz Lopez*, 2026 WL 261938, at \*12 (quoting *Demore v. Kim*, 538 U.S. 510, 531 (2003)). Thus, "the Supreme Court has held that due process does not require a bond determination for a section 1226(c) detention during the entirety of removal proceedings." *Id.* (first citing *Demore*, 538 U.S. at 531; then citing *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1210–12 (11th Cir. 2016) (discussing *Demore*), *decision vacated and appeal dismissed as moot*, 890 F.3d 952 (11th Cir. 2018)). If the Fifth Amendment does not require a bond hearing "for section 1226 detainees during their mandatory detention, 'then the same is true' for section 1225 detainees during theirs." *Id.* (citing *Chen*, 2026 WL 100761 at \*14). As such, Petitioner's mandatory detention under section 1225(b)(2) neither violates the INA nor the Fifth Amendment's Due Process Clause.

Next, relying on *New Hampshire v. Maine*, 532 U.S. 742 (2001), Petitioner claims (in Count III) that the doctrine of judicial estoppel precludes DHS from detaining her under section 1225(b)(2)(A). The doctrine prescribes that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire*, 532 U.S. at 749 (quotation omitted).

Petitioner argues that the Government cannot subject applicants for admission to section 1225(b) detention because the Acting Solicitor General

previously stated during oral argument before the Supreme Court that "unadmitted aliens who were not apprehended within 14 days were subject to discretionary detention under § 1226(a), not mandatory detention under § 1225(b)(2)(A)." (Doc. 1, ¶ 131) (citing Transcript of Oral Argument at 7–8, *Jennings v. Rodriguez*, 583 U.S. 281 (2018) (No. 15-1204)). Petitioner fails to appreciate, however, that *Jennings* did not concern whether "unadmitted aliens who were not apprehended within 14 days" are subject to mandatory or discretionary detention. And, unsurprisingly, nowhere in *Jennings*—not even in dicta—did the Supreme Court adopt the Acting Solicitor General's remark. *See generally* 583 U.S. at 285–314 (holding that section 1225(b)(1), section 1225(b)(2), and section 1226(c) do not contain a six-month limit on the length of detention, and that section 1226(a) does not require periodic bond hearings every six months). Thus, it cannot be said that the Government in *Jennings* "succeed[ed] in maintaining [a] position," *New Hampshire*, 532 U.S. at 749, regarding the kind of detention to which Petitioner is subject.

Petitioner's argument not only fails the rubric for judicial estoppel; it fails the 30,000-foot test. In essence, Petitioner argues that the Government may never change its successful litigation positions on matters of statutory interpretation. Were that the law, one might wonder how we ever got the *Chevron* doctrine, not to mention why the Supreme Court ever had occasion to abandon it. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 399 (2024)

(noting that *Chevron* "demands that courts mechanically afford *binding* deference to agency interpretations, including those that have been inconsistent over time"); *id.* at 410–11 (noting that *Chevron* "becomes a license authorizing an agency to change positions as much as it likes" and "allows agencies to change course" on statutory interpretation "even when Congress has given them no power to do so"). Unsurprisingly, Petitioner does not direct this Court to any authority indicating that the doctrine of judicial estoppel precludes the Executive Branch from changing its statutory interpretations as policies shift from one Administration to the next, and this Court locates none.[6] As such, Count III lacks merit.

Next, in Count IV, Petitioner claims that her detention by the Baker County Sheriff's Office ("**BCSO**"), on behalf of ICE, violates the Tenth Amendment. DHS and ICE entered into a "Memorandum of Agreement" with BCSO, which grants "BCSO personnel the authority to perform certain immigration enforcement functions[.]" (Doc. 1-8 at 1). The memorandum delegates two authorities: the power to serve and execute warrants of arrest for immigration violations "in order to transfer custody of the alien to ICE," and the power to serve such warrants "that execute[ ] the custodial transfer of the alien to ICE for removal purposes." (*Id.* at 8).

---

[6] But again, in any event, none of Petitioner's claims were before the Supreme Court in *Jennings*.

Petitioner's argument on this claim is not entirely clear. She asserts that BCSO exceeds its authority under the memorandum because it does not authorize BCSO to detain aliens transferred by ICE from outside BCSO's jurisdiction—resulting in BCSO functioning as "an overflow detention center." (Doc. 1, ¶¶ 132–37). Yet Petitioner appears to claim that this violates the anti-commandeering doctrine of the Tenth Amendment, which doctrine—as she herself describes it—bars the federal government from "commandeering state employees to carry out federal prerogatives." (*Id.* ¶ 134) (quotation omitted).

The Tenth Amendment provides that "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. This amendment codifies, among other things, an "anticommandeering" principle, which "is simply the expression of a fundamental structural decision incorporated into the Constitution, *i.e.*, the decision to withhold from Congress the power to issue orders directly to the States." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 470 (2018).

Necessary to a successful anti-commandeering claim is some form of federal government coercion of—or command to—a state to exercise its legislative, administrative, or enforcement functions. *See Montgomery Cnty. Comm'n v. Fed. Hous. Fin. Agency*, 776 F.3d 1247, 1261 (11th Cir. 2015) ("[Under t]he general 'anti-commandeering' parameters of the Tenth

Amendment: (i) Congress may not require a state legislature to enact any laws or regulations and (ii) Congress may not command state officers to administer or enforce a federal regulatory program."); *Printz v. United States*, 521 U.S. 898, 935 (1997) ("The Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program."); *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 288 (1981) (holding that the statute at issue did not commandeer the states because the states "[were] not compelled to enforce the steep-slope standards, to expend any state funds, or to participate in the federal regulatory program"); *New York v. United States*, 505 U.S. 144, 167–68 (1992) (distinguishing partnerships between states and the federal government, or "cooperative federalism," from instances where the federal government "compels [s]tates to regulate").

Far from commandeering, the memorandum reflects *cooperation*. It forms a partnership between ICE and BCSO to assist ICE in "perform[ing] certain immigration enforcement functions[.]" (Doc. 1-8 at 1). The permissive language throughout the memorandum, akin to language one would see in a contract, demonstrates the voluntary nature of the agreement. (*See, e.g.*, *id.* ("The BCSO and ICE enter into this MOA in good faith and agree to abide by the terms and conditions contained herein."); *id.* ("The purpose of this

collaboration is to promote public safety by facilitating the custodial transfer of specific aliens in BCSO's jail/correctional facilities to ICE for removal purposes at the time of the alien's scheduled release from criminal custody."); *id.* ("This MOA sets forth the terms and conditions pursuant to which selected BCSO personnel (participating BCSO personnel) will be nominated, trained, and approved by ICE to perform certain limited functions of an immigration officer within the BCSO's jail/correctional facilities.")). To whatever extent BCSO's actions could exceed the authority granted to it by the memorandum,[7] Petitioner does not allege how this this conduct results from federal coercion, much less the kind cognizable under *New York v. United States* and its progeny. As such, Count IV fails.

Petitioner's next two claims concern access to her medical exams, which are necessary to her application to change her legal status. Specifically, in Count V, Petitioner asserts a similar Tenth Amendment claim—that ICE exceeded its authority set forth in the memorandum—because it prevented BCSO from taking Petitioner to her medical exams. (Doc. 1, ¶¶ 139–44). And in Count VI, Petitioner challenges two policies promulgated by United States

---

[7] The memorandum contemplates a separate agreement authorizing BCSO to detain aliens for a longer period. (*See* Doc. 1-8 at 8 ("[T]he alien will continue to be held in the BCSO's jail/correctional facilities for no more than 48 hours unless there exists an agreement pursuant to which the [BCSO] will continue to detain, for a reimbursable fee, aliens for immigration purposes.")).

Citizenship and Immigration Services ("**USCIS**"), an agency of DHS. As alleged, these policies, together, are *ultra vires* because they make it impossible for her to attend the medical exams needed to adjust her legal status. (*Id.* ¶¶ 10, 147, 150).[8]

However, in Petitioner's amended reply, she "clarifies that ICE is now allowing Petitioner's doctor to perform an onsite I-693 medical exam," and this exam is part of the process "to adjust [her] status with USCIS." (Doc. 21 at 1 n.1, 3; *see also id.* at 3 n.6; Doc. 21-4 at 1–8 (email communications with BCSO securing Petitioner's medical examination with ICE approval)). In light of these developments, no live controversy remains as to these claims. *See Djadju v. Vega*, 32 F.4th 1102, 1106 (11th Cir. 2022) ("A cause of action becomes moot 'when it no longer presents a live controversy with respect to which the court can give meaningful relief.'" (quoting *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011))). As such, Petitioner has not met her burden on Counts V and VI, and those counts will be dismissed as moot. *See id.* at 1107 ("Ultimately, the burden remains on the petitioner to establish that his case still presents a live 'case or controversy[.]'" (quoting *Mattern v. Sec'y for Dep't of Corrs.*, 494 F.3d 1282, 1285 (11th Cir. 2007))).

---

[8] Petitioner also claims that these policies promulgate a legislative rule that did not undergo a notice and comment period as the APA requires. (Doc. 1, ¶ 154).

Lastly, Petitioner's claim for declaratory relief in Count VII rests on her prior claims, which this Court rejects for the reasons set forth above. As such, Count VII, too, fails.

* * *

In light of the foregoing, it is **ORDERED**:

1.  Counts I, II, III, IV, and VII of the Petition for Writ of Habeas Corpus (Doc. 1) are **DENIED**.

2.  Counts V and VI of the Petition for Writ of Habeas Corpus are **DISMISSED**.

3.  Petitioner's "Second Motion for Temporary Restraining Order and Preliminary Injunction and Memo in Support" (Doc. 17) is **DENIED**.

4.  The Clerk is **DIRECTED** to enter judgment, terminate any pending motions as moot, and close this case.

**DONE** and **ORDERED** in Jacksonville, Florida, on March 27, 2026.

 

_____

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

-18-